# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHESAPEAKE LAND DEVELOPMENT COMPANY LLC, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) NO. CIV-16-0132-HE ) |
| CHICAGO TITLE INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) |

## ORDER

Plaintiff Chesapeake Land Development Company, L.L.C. ("Chesapeake") filed this action in state court against Chicago Title Insurance Company ("Chicago Title") and Capitol Abstract & Title Company ("Capitol Abstract") asserting claims related to its 2007 purchase of certain real property. Chicago Title removed the action on grounds of diversity jurisdiction after the state court dismissed Chesapeake's claims against Capitol Abstract, a nondiverse party.

The court previously granted Chicago Title's motion to dismiss as to certain claims, but denied it with respect to plaintiff's bad faith claim and its breach of contract claim based on certain use restrictions which Chesapeake claims encumber its title to the property. Order, November 30, 2017 [Doc. #60]. The court concluded the potential application of Oklahoma's Marketable Record Title Act ("MRTA") to the use restrictions, which was essentially a defense raised by defendant, could not be determined on a motion to dismiss the complaint. Chicago Title has now, by the present motion for judgment on the pleadings, squarely raised the question of the application of the MRTA. It contends

that the pleadings and the documents referenced in them establish, as a matter of law, that the use restrictions upon which Chesapeake's claims are based have been extinguished or released.

"Judgment on the pleadings is appropriate only when the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." Sanders v. Mountain Am. Fed. Credit Union, 689 F.3d 1138, 1141 (10th Cir. 2012) (internal quotation marks omitted). The court "accept[s] all facts pleaded by the non-moving party as true and grant[s] all reasonable inferences from the pleadings in that party's favor." *Id.* (internal quotation marks omitted).

## Background

The amended complaint alleges that Chesapeake purchased two adjoining lots in Nichols Hills, Oklahoma (the "Property) in 2007. In connection with that purchase, Chicago Title and Capitol Abstract conducted a title investigation before the acquisition. Capitol Abstract allegedly discovered that both lots were burdened with specific use restrictions included in two 1954 deeds by which G.A. Nichols Inc. and members of the Nichols Family conveyed the Property to the Christian Science Society of Oklahoma City. The deed for one lot limited its use to church purposes. The deed for the other provided that it could be used only as a park. The same use restrictions were also included in two 1956 deeds that conveyed the Property from the Christian Science Society of Oklahoma City to Chesapeake's seller, the First Church of Christ, Scientist.[1]

---

[1] *There were corrective deeds involved at some point, and various name changes as to the church entity or its successors, but they do not impact the analysis.*

The complaint alleges that when Chesapeake learned of the use restrictions, its agent Joe Lewallen informed Capitol Abstract that the restrictions would have to be removed before the sale closed. Capitol Abstract's representatives allegedly advised Mr. Lewallen that the restrictions could be removed at the time of sale by obtaining releases from the First Church of Christ, Scientist (the "Church"), the seller and then-current owner of the Property.[2]

Chesapeake alleges it then purchased the Property for $10,000,000, obtained releases from the seller,[3] and simultaneously purchased a title insurance policy in the amount of $10,000,000 from defendant Chicago Title. The complaint alleges Chesapeake attempted to sell the Property in late 2014 but that, during the sales process, it discovered the Property was still burdened by the use restrictions in the 1954 deeds. When this prevented the sale from being completed, plaintiff submitted a claim of loss to Chicago Title, asking it to perform its duties under the title policy so the sale could be finalized. Plaintiff alleges that, although defendant accepted the claim under a reservation of rights on May 11, 2015, and took the position that the claim was covered under the policy, it failed to take steps to "alleviate the title issue to the Property for several months," and the third-party offer to buy the Property was rescinded. Doc. #44, p. 5, ¶11.[4]

---

[2] *The release involved recited that the Church was the successor in interest to multiple entities, including the entity in whose favor the restriction ran.*

[3] *The release attached to the pleadings references release of the restrictions in the 1956 deeds, but makes no mention of the 1954 deeds. Doc. #61-7.*

[4] *References to documents are to the CM/ECF document and page number.*

Plaintiff alleges defendant, instead of "properly respond[ing] to the demands of its insured to cure the burdens/ownership issues on the Property and/or to pay Chesapeake under the Title Policy," modified its original acceptance of plaintiff's claim on October 12, 2015, by insisting on the right to attempt to cure the defects caused by the use restrictions. *Id*. at ¶12. It alleges defendant hired counsel in late 2015 to investigate and cure the defects, "[m]ore than seven (7) months after Chesapeake submitted its initial claim and after the Property sale had failed …." *Id*. at ¶13. Plaintiff alleges that defendant refused to pay any amount under the title policy for over 18 months and offered less than 3% of the total policy coverage amount when it finally made a payment offer. Plaintiff contends these actions breached the insurance contract and showed bad faith in doing so.

## Analysis

Chicago Title argues that it is entitled to judgment on the pleadings on the issue of whether Chesapeake's title to the Property was encumbered by use restrictions at the time of purchase. It claims that the 1954 (pre-root) use restrictions were extinguished by the Oklahoma Marketable Record Title Act ("MRTA" or the "Act") and that the 1956 (post-root) restrictions were voluntarily released. *See* Doc. #80, p. 13.[5] Chesapeake does not appear to challenge the assertion that the 1956 restrictions were released; it does challenge the motion insofar as Chicago Title relies on the MRTA.

---

[5] *The court previously concluded that Chesapeake had sufficiently pleaded a breach of contract claim based on the use restrictions for purposes of Fed.R.Civ.P. 12(b)(6), unless they had been expunged by MRTA. See Doc. #60, p. 10.*

4

Capitol Title contends that the 1956 deeds from the Christian Science Society to Fifth Church of Christ Scientist constitute a "root of title" under the MRTA and that, by operation of that statute, the prior use restrictions from the 1954 deeds are extinguished. Chesapeake asserts various arguments as to why the MRTA does not extinguish the use restrictions created by the 1954 deeds. It principally focuses on arguing that the Act is not self-executing and does not cut off a pre-existing interest unless there has been a quiet title action or other judicial determination as to the application of the Act. It also argues that the use restrictions at issue here are excepted from the MRTA's scope by the Act itself, citing 16 Okla. Stat. § 76(A). Neither of those arguments is particularly persuasive but, in light of the court's conclusions discussed below, it is unnecessary to definitively resolve those questions here. Rather, the court concludes the MRTA does not cut off the 1954 restrictions for a more basic reason: the "root[s] of title" upon which defendant relies --- the 1956 deeds --- are not the type of "root" that can eliminate the restrictions at issue here.

Oklahoma's MRTA is "based upon the principle that when one has clear record title for at least 30 years, all interests recorded prior to this period should be cut off unless preserved by filing a proper notice." Rocket Oil & Gas Co. v. Donabar, 127 P.3d 625, 630 (Okla. Civ. App. 2005). Under the MRTA, a person with an "unbroken chain of title of record" to an interest in land from the present back to the applicable "root of title" is deemed to have, subject to certain exceptions, "marketable record title" to that interest. 16 Okla. Stat. §§ 71, 73. "Root of title" means "that conveyance or other title transaction in the chain of title of a person, purporting to create the interest claimed by such person, upon which he relies as the basis for the marketability of his title…" which was filed of record

at least 30 years prior to the time at which marketability is being determined. 16 Okla. Stat. §78(e). Of particular consequence here is the requirement that the conveyance relied on as the root of title must <u>purport to create the interest claimed</u> by the person asserting title.

Here, Chicago Title essentially asserts that its insured received title to the Property free and clear of any restrictions limiting it to church/park purposes. That is the interest it is claiming. So the question becomes whether the 1956 deeds, upon which Chicago Title relies for its root(s) of title, actually purported to create such an interest. The court concludes they plainly did not. Neither of the 1956 deeds purport to exclude the use restrictions or to convey an interest in land inconsistent with those restrictions. To the contrary, the 1956 deeds included the very same restrictions --- to church and park use --- as were included in the 1954 deeds. The bottom line is that there is nothing in the 1956 deeds that is inconsistent with the interests as described in the earlier deeds so as to cut off the prior interest.

It does not solve the problem for Chicago Title to point to the release of the 1956 restrictions at the 2007 closing. The question for MRTA purposes is not whether the 1956 deed restrictions were released. Presumably, they were. Rather, the question is whether the conveyances that had been of record for 30 years purported to claim an interest inconsistent with the 1954 use restrictions, so as to cut them off under the Act. They did not.

In arguing to the contrary, Chicago Title references 16 Okla. Stat. § 72(a), which generally provides that marketable record title is subject to all interests and defects

"inherent in the muniments of title" which form the record chain of title, subject however, to the proviso that "a general reference in such muniments, or any of them, to interests created prior to the root of title shall not be sufficient to preserve them" unless they are specifically identified. It argues the 1956 deeds did not specifically reference the earlier restrictions, therefore they are not preserved based on the proviso.

But the proviso does not apply to the situation presented here. It might well have applied if the 1956 deeds had purported to convey fee simple title "subject to restrictions of record" or some similar language. But that is not what the 1956 deeds did. Rather, they conveyed the fee title, but did so <u>explicitly</u> subject to church/park use restrictions. The quantum of interest in the real estate conveyed by the deeds explicitly did <u>not</u> include the right to use the Property for anything other than those uses. As stated above, the interest which was <u>purported</u> to be conveyed by the 1956 deeds did not include the interest that defendant is attempting to acquire via the MRTA. There was hence nothing in the 1956 deeds which would serve to "cut off" the earlier 1954 restrictions.

In any event, the court concludes that the MRTA does not operate to extinguish the restrictions in the 1954 deeds.

For the reasons stated, the court concludes defendant's motion for judgment on the pleadings [Doc. #80] should be **GRANTED IN PART and DENIED IN PART**. The motion is granted insofar as it seeks judgment that the 1956 deed restrictions were voluntarily released. It is denied insofar as it seeks judgment that the 1954 deed restrictions were extinguished by the MRTA.

**IT IS SO ORDERED.**

Dated this 17th day of May, 2018.

JOE HEATON
CHIEF U.S. DISTRICT JUDGE